Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7909 | **DATE** | 2/28/2001 |
| **CASE TITLE** | Shapo vs. Engle et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Plaintiff's motion (Doc 287-1) to enforce this Court's June 30, 2000 Opinion is granted. The Defendants are instructed to produce the following Parent Company financial records and other documents for the years 1990 to 1996: 1) general ledgers; 2) journal vouchers (along with supporting or related memoranda and correspondence); 3) bank account statements from any bank through which funds were transferred between and among Parent Companies and to third-party obligees; and 4) account records and brokerage statements reflecting the purchase or sale of Parent Company stock by the Parent Companies. Defendant Engle is instructed to produce: 5) documents relating to transactions between and among the Parent Companies and Engle.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 0 1 2001 date docketed | 307 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | CM docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| NATHANIEL S. SHAPO, Director of Insurance of the State of Illinois, solely in his capacity as statutory and court-affirmed Liquidator of Coronet Insurance Company, Crown Casualty Company and National Assurance Indemnity Company,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>CLYDE WM. ENGLE; TIMOTHY LOWELL BROWN; LEE N. MORTENSON; EVERETT A. SISSON; ROBERT SPILLER; GLENN J. KENNEDY; RICHARD A. LEONARD; PAUL HOWARD ALBRITTON, JR.; PETER HENRY BERGMAN; TELCO CAPITAL CORPORATION; RDIS CORPORATION; WISCONSIN REAL ESTATE INVESTMENT TRUST; HICKORY FURNITURE CORPORATION; INDIANA FINANCIAL INVESTORS, INC.; SUNSTATES CORPORATION; NORMANDY INSURANCE AGENCY, INC.; SEW SIMPLE SYSTEMS, INC.; SUNSTATES EQUITIES, INC.; SUNSTATES FINANCIAL SERVICES, INC.; ALBA-WALDENSIAN HOLDINGS COMPANY; RMHC (DELAWARE), INC.; WELLCO HOLDINGS COMPANY; and SUNSTATES REALTY GROUP, INC.;<br><br>　　　　　　　　　　Defendants.<br><br>THE SPRINGS-ILLINOIS, INC.,<br><br>　　　　　　　　　　Plaintiff-Intervenor,<br><br>vs.<br><br>GLENN J. KENNEDY; SEW SIMPLE SYSTEMS, INC., and SUNSTATES REALTY GROUP, INC.,<br><br>　　　　　　　　　　Defendants. | 98 C 7909 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on Plaintiff's motion to enforce this Court's June 30, 2000 opinion. For the following reasons, the Plaintiff's motion is granted.

## BACKGROUND

This Court has set forth the factual background of the case at length in previous decisions in this matter. See Shapo v. Engle, No. 98 C 7909, 1999 WL 446853 (N.D. Ill. June 11, 1999) (Kocoras, J.) (denying certain Defendants' motion for advancement of expenses and costs); Shapo v. Engle, No. 98 C 7909, 1999 WL 528528 (N.D. Ill. July 13, 1999) (Kocoras, J.) (dismissing Plaintiff's Second Amended Complaint); Shapo v. Engle, No. 98 C 7909 (N.D. Ill. Nov. 10, 1999). For purposes of this motion, the Court assumes familiarity with those facts.

The Plaintiff, Nathaniel Shapo, brings this case in his capacity as Liquidator of Coronet Insurance Company, Crown Casualty Company and National Assurance Indemnity Company (collectively "Insurance Companies"). In his Complaint, the Plaintiff alleges a complex conspiracy by the Defendants to improperly transfer money from the Insurance Companies to the Parent Companies. The Defendants allegedly caused money to be transferred from the Insurance Companies to the Defendant-controlled "Downstream Affiliates" and then from these affiliates to the Parent

Companies.[1] This motion concerns the proper scope of discovery of certain Defendants' (known as the "Parent Companies") financial records.[2]

In May of 2000, the Plaintiff moved to compel production of certain Parent Company documents. This Court granted Plaintiff's motion to compel production by order dated June 30, 2000. After this order was entered, the parties could not agree on what was discoverable. Plaintiff filed the current motion to enforce on January 12, 2001.

## DISCUSSION

The parties differ over both the scope of the June 30 opinion and the relevance of this production. The Court will address each of these disagreements in turn.

1.  Scope of 6/30/00 Opinion

The Plaintiffs argue that these financial records were requested in the original motion to compel, and since the motion to compel was granted, the records should be produced. The Defendants interpret the June 30 opinion to require production of only

---

[1] The identities of the Downstream Affiliates are not necessary for the purposes of this opinion.

[2] The Plaintiff has named as defendants the following Parent Companies: RDIS Corporation (formerly known as Libco Corporation); Telco Capital Corporation; Wisconsin Real Estate Investment Trust; Hickory Furniture Company; Sunstates Corporation (formerly known as Acton/Sunstates). The Plaintiff has also named Indiana Financial Investors, Inc. and Normandy Insurance Agency, Inc. as defendants and has claimed that they received illegally diverted cash from the Insurance Companies in this scheme. Shapo v. Engle, 1999 WL 528528 at *1 n. 2 (N.D. Ill. 1999).

documents reflecting transactions between Parent Companies. The Defendants admit that the Plaintiff's motion to compel requested a broader category of documents, but this Court narrowed the scope of production.

Simply put, the Plaintiff asked for financial records from the Parent Companies and the Court granted the motion. The Plaintiff's May 3, 2000 motion to compel production of documents requested that this Court enter an order requiring Defendants to produce, inter alia, "All financial records and other documents relating thereto of the Parent Companies from 1990 to the present, including: (1) documents relating to transactions between and among the Parent Companies; and (2) documents relating to transactions between and among the Parent Companies and Engle or other Engle-related persons and entities. Pl.'s Motion to Compel at 8. On June 30, 2000, this Court released an opinion granting Plaintiff's motion. In this opinion the Court stated that it would not "narrowly proscribe discovery so as to curtail the tracing of funds merely because the transfer of funds may involve two parent companies, rather than some combination of entities." Mem. Op. 6/30/00 at 7. The Defendants' attempt to limit the Order to the production of documents that reflect transactions between the different Parent Companies is misplaced. Clearly, this Court envisioned the Plaintiffs being able to trace the money from the Insurance Companies, through the Downstream Affiliates to the Parent Companies, and then to its ultimate destination. See Tr. of Proceedings, 5/9/00 at 12 (Attached to Pl.'s Motion to Enforce as Exhibit B).

2. Relevancy Considerations

The Plaintiff argues that this discovery is needed to prove motive. This conspiracy, according to the Plaintiffs, was instigated to benefit the Parent Companies to the detriment of the Insurance Companies. Documentation that proves the final destination of the money could show that the money was indeed used for the benefit of the Parent Companies, and not for the benefit of the Insurance Companies. The Defendants argue that the records requested are not relevant to the Plaintiff's case. The Defendants believe that since the Plaintiff is attempting to prove that money was illegally funneled out of the Insurance Companies, the Plaintiff is only entitled to records showing the transfer of money from the Downstream Affiliates to the Parent Companies. The Defendants argue that the disposal of the money by the Parent Companies is irrelevant.

As an initial matter, this Court again notes its broad discretion in discovery matters. See 6/30/00 Mem. Op. at 6-7. All relevant material is discoverable, and the definition of relevancy under the Federal Rules of Civil Procedure is extremely broad. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); Fed. R. Civ. P. 26(b)(1). A discovery request is relevant if there is any chance that the information sought may be relevant to the subject matter of the action. In re Aircrash Disaster Near Roselawn, Indiana, 172 F.R.D. 295, 303 (N.D. Ill. 1997) citing 8 Wright & Miller, Federal Practice and Procedure, Sect. 2008 (1970). Against

this backdrop, it cannot be said that the financial records of the Parent Companies are not relevant. The Plaintiff has alleged a vast conspiracy. The aim of the alleged conspiracy, according to Plaintiff, was to funnel money out of the Insurance Companies and into the Parent Companies, to the detriment of the Insurance Companies, and the benefit of the Parent Companies. The Plaintiff believes that being able to show where the money ended up is necessary to portray the breadth of the conspiracy. Although the Defendants contend that this theory is inconsistent with the Plaintiff's Complaint, the Supreme Court has stated that discovery is not limited to issues raised in the pleadings. Oppenheimer Fund, 437 U.S. at 351.

3.  Further Considerations

The Plaintiff, in his reply brief, requests clarification about Defendant Clyde Engle's role in this discovery process. In the Plaintiff's May 2000 motion to compel, Engle was requested to turn over documents reflecting transfers between Parent Companies and Engle. Pl.'s Motion to Compel at 8. The Court granted that request, and now reiterates its order for Engle to produce the relevant documents.

As a final matter, the parties are reminded that the production contemplated by this opinion is still subject to the relevant protective orders.

## CONCLUSION

Therefore, the Defendants are instructed to produce the following Parent Company financial records and other documents for the years 1990 to 1996:

(1) general ledgers;

(2) journal vouchers (along with supporting or related memoranda and correspondence);

(3) bank account statements from any bank through which funds were transferred between and among Parent Companies and to third-party obligees; and

(4) account records and brokerage statements reflecting the purchase or sale of Parent Company stock by the Parent Companies.

And Defendant Engle is instructed to produce:

(5) documents relating to transactions between and among the Parent Companies and Engle.

_Charles P. Kocoras_
Charles P. Kocoras
United States District Judge

Dated: February 28, 2001