# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7909 | **DATE** | 5/24/2001 |
| **CASE TITLE** | Nathaniel Shapo vs. Clyde William Engel | | |

**MOTION:**
[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ■  Status hearing set for **6/27/2001 at 9:00 A.M.**.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  **Plaintiff's motion to compel responses to interrogatories and request for production of documents (#312-1, 312-2) is granted. Enter Memorandum Opinion and Order.**

(11)  ■  [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

AC  —  courtroom deputy's initials

10
number of notices

**MAY 2 5 2001**
date docketed

docketing deputy initials

5/24/2001
date mailed notice

AC
mailing deputy initials

Document Number
**319**

EO-7
FILED FOR DOCKETING
01 MAY 24 PM 3:23

Date/time received in central Clerk's Office



| | | |
|---|---|---|
| NATHANIEL S. SHAPO, Director of Insurance of the State of Illinois, *et cetera*, | ) ) ) | No. 98 C 7909 |
| | ) ) | Judge Charles P. Kocoras |
| Plaintiff, | ) ) | |
| v. | ) ) | Magistrate Judge Arlander Keys |
| CLYDE WILLIAM ENGLE, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Liquidator's (Plaintiff's) Motion to Compel Responses to Interrogatories and Requests for Production. For the reasons set forth below, the Court grants Liquidator's Motion in its entirety, and awards the Liquidator his fees and costs incurred in filing (and refiling) the present Motion.

## BACKGROUND

The present Motion before the Court concerns one of many discovery disputes that have epitomized this litigation since its inception in 1998. This opinion only addresses the facts that are relevant to ruling on the present Motion; a more detailed synopsis of the factual background may be found in previous decisions in this matter. *See Shapo v. Engle*. No. 98 C 7909, 1999 WL 446853

(N.D. Ill. June 11, 1999)(Kocoras, J.)(denying certain Defendants' motion for advancement of expenses and costs); *Shapo v. Engle*, No. 98 C 7909, 1999 WL 528528 (N.D. Ill. July 13, 1999)(Kocoras, J.)(dismissing Plaintiff's Second Amended Complaint); *Shapo v. Engle*, No. 98 C. 7909, (N.D. Ill. Nov. 10, 1999).

I.    **Prior Motions to Compel**

Before delving into the specifics of the present Motion to Compel, it is necessary to discuss previous motions to compel (before Judge Kocoras), which set the landscape for this present controversy.[1]    On May 3, 2000, the Liquidator moved to compel production of certain financial records from both the Downstream Affiliates and the Parent Companies from 1990 to the present.[2] Significantly, Judge Kocoras granted this motion in its entirety.

_____

[1] By Order dated January 18, 2001, Judge Kocoras referred further discovery disputes, including the present Motion, to this Court.

[2] This case arises from an alleged complex scheme, allegedly led by Defendant Mr. Engle, to loot the assets of the Coronet Insurance Company, Crown Casualty Company, and National Assurance Indemnity Company (collectively the "Insurance Companies").   The Defendants are Mr. Engle, other individual officers and directors of the Insurance Companies, and various affiliated companies that are owned and controlled by Mr. Engle, some of which were corporate parents to the Insurance Companies (the "Parent Companies") and others of which were subsidiaries of the Insurance Companies (the "Downstream Affiliates").   The names of the Parent Companies and Downstream Affiliates are not relevant for this Motion.

(*See* June 30, 2000 Memorandum Opinion and Order at 7.) However, further disputes arose over the scope of Judge Kocoras' June 30, 2000 Order. According to the Liquidator, Defendants disregarded the June 30th Order and produced only a small fraction of Parent Company documents. Because Defendants had indicated that the records falling within the scope of the June 30th Order were voluminous, and in order to expedite production of the most important documents to the tracing analysis[3], the Liquidator agreed – without prejudice to his right to receive the rest of the documents compelled in Judge Kocoras' June 30th Order – to focus on the relevant documents for the tracing analysis from 1990 through 1996, the years when intercompany transactions allegedly occurred with money traceable from the Insurance Companies. In other words, at no time did the Liquidator waive his right to receive the

---

[3] Under the tracing analysis, the Liquidator traces the flow of Insurance Company money through the Downstream Affiliates, to the Parent Companies, and then to the money's ultimate destination. According to the Liquidator, documentation that proves that the final destination of the money benefitted the Parent Companies (and individual Defendants) and not the Insurance Companies, is relevant to prove motive. Judge Kocoras made clear in his February 28, 2001 Order (discussed *infra*) that the Liquidator is entitled to documentation showing where the alleged illegally funneled money ended up: "Clearly, this Court envisioned the Plaintiffs being able to trace the money from the Insurance Companies, through the Downstream Affiliates to the Parent Companies, and then to its ultimate destination." (February 28, 2001 Order at 4.)

documents covered by Judge Kocoras' June 30th Order, which covered documents from 1990 to the present (and were relevant to aspects of the case other than tracing). Rather, the Liquidator chose to focus on a *subset* of the documents – from 1990 through 1996 – dealing with the tracing analysis.

Nevertheless, Defendants failed to produce this subset of documents, contending that the scope of the June 30th Order was unclear. On January 12, 2001, the Liquidator filed a Motion to Enforce Order of June 30, 2000 Directing Defendants to Produce Certain Documents.[4] However, importantly – and what Defendants seem to ignore – is that in this January 12, 2001 Motion, the Liquidator only requested that the Parent Company produce documents from 1990 through 1996. (*See* January 12, 2001 Motion at 8.) In other words, the Liquidator did not request that Judge Kocoras merely reissue his previous June 30th Order, but rather asked that

---

[4] At the May 11, 2001 hearing regarding the present Motion to Compel, Defendants argued that the Liquidator's January 12, 2001 Motion to Enforce should have been characterized as a "Motion to Clarify" (and not enforce *per se*) the June 30, 2000 Order. (*See* Transcript of May 11, 2001 hearing at 5.) However, it is entirely irrelevant what the January 12, 2001 Motion was called. The critical point is that the Liquidator requested certain documents from 1990 through 1996 (a subset of the original documents requested in his May 2000 Motion), and Judge Kocoras, in his February 28, 2001 Order, granted in its entirety that request.

a subset of documents from that Order be immediately produced.  In his February 28, 2001 Order, Judge Kocoras granted the Liquidator's January 12, 2001 Motion in its entirety, thereby ordering the production of Parent Company financial records and other documents for the years 1990 through 1996.[5]  Therefore, Judge Kocoras granted in full both of the Liquidator's Motions to Compel (one from May 3, 2000 and one from January 12, 2001, which only requested a subset of documents from the June 30th Order).  As of the May 11, 2001 hearing, it is the Court's understanding that Defendants are still in the process of complying with Judge Kocoras' February 28, 2001 Order.

---

[5] As will be discussed *infra*, Defendants argue that Judge Kocoras' February 28, 2001 Order inherently limited discovery to the years 1990 through 1996, and that, therefore, the Liquidator's present Motion to Compel, which requests, *inter alia*, documents from 1996 to the present, is improper.  However, in his January 12, 2001 Motion to Compel, the Liquidator only requested a subset of documents (those encompassing years 1990 through 1996).  Therefore, Judge Kocoras' February 28, 2001 Order – which was merely *responding* to the Liquidator's January 12, 2001 Motion (which Judge Kocoras granted in full) – cannot be fairly interpreted as a temporal limit on discovery to the years 1990 through 1996, especially since Judge Kocoras' June 2000 Order compelled discovery for certain documents from 1990 to the present.  Furthermore, in January 2001, Judge Kocoras referred this Motion to this Court, and this Court may make *de novo* findings. Nonetheless, as will be shown *infra*, this opinion is entirely consistent with Judge Kocoras' prior discovery rulings.

## II. The Present Motion to Compel

The present Motion to Compel concerns documents related to the tracing analysis, as well as documents that concern potential damages. This Motion was originally filed on January 16, 2001. On February 16, 2001, however, Defendants' counsel agreed, *inter alia*, to respond to several of the requested discovery items by March 2, 2001. Consequently, on February 20, 2001, the Liquidator moved for permission to withdraw his January 16th Motion, without prejudice to re-noticing it should he deem it necessary after receiving Defendants' discovery responses. On February 23, 2001, this Court granted this request, directing the Liquidator to notify the Court by March 16, 2001 as to whether the matter had been fully resolved.

On March 2, 2001, the Liquidator did not receive any of the documents promised on February 16th. During phone conversations before March 16th, however, Defendants' counsel confirmed that some items requested by the present Motion were already covered by the February 28, 2001 Order and would be produced, and that Defendants would respond to the other items during the week of March 20, 2001. Consequently, based on these promises, the Liquidator's counsel did not refile this Motion on March 16th, but rather reported to the Court that the matter had not yet been resolved, but that responses were promised for the following week.

During the following week, the Liquidator's counsel called Defendants' counsel, seeking the promised responses, and counsel for Defendants proposed a meeting to discuss the matters. On April 4, 2001, the parties met, and counsel for Defendants, again, promised to provide responses by April 10, 2001. However, Defendants did not provide any documents by April 10th, but instead sent a letter explaining their positions. On April 11, 2001, the Liquidator refiled the present Motion to Compel. On April 27, 2001, Defendants filed their Opposition to Liquidator's Motion to Compel ("Opposition Motion"), and on May 4, 2001, the Liquidator filed his Reply. On May 11, 2001, this Court held a hearing on the matter.

## DISCUSSION

Discovery is a search for the truth. Accordingly, the Federal Rules of Civil Procedure ("FRCP") provide a court with broad discretion in resolving discovery disputes. *Meyer v. Southern Pacific Lines,* No. 00 C 4308, 2001 WL 293999 (N.D. Ill. March 26, 2001)(citation omitted)(Keys, J.). A motion to compel discovery is granted or denied at the discretion of the trial court. *Id.* (citation omitted). In ruling on motions to compel discovery, "courts have consistently adopted a liberal

interpretation of the discovery rules." *Id.* (citation omitted).

Under FRCP 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery, or to the claim or defense of any other party ...". Fed.R.Civ.P. 26(b)(1)(West 2000). A request for discovery "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *AM Intern., Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (N.D. Ill. 1981), citing 8 Wright & Miller, Federal Practice and Procedure, Civil § 2008 (1970). Thus, courts commonly look unfavorably upon significant restrictions placed upon the discovery process. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 135 (N.D. Ill. 1993). The burden rests upon the objecting party to show why a particular discovery request is improper. *E.E.O.C. v. Klockner H & K Machines, Inc.,* 168 F.R.D. 233, 235 (E.D. Wis. 1996).

Here, as will be shown, all of the Liquidator's discovery requests in his Motion to Compel seek relevant, non-privileged information, and, therefore, must be turned over to the Liquidator. It is unavailing that Defendants may have already produced hundreds

of thousands of documents for inspection and copying. This is a complex case, involving many Defendants and allegedly over $60 million in damages, and the Liquidator is entitled to all relevant, non-privileged information.

The Court will address each of the Liquidator's discovery requests in turn. It should be noted that Judge Kocoras' February 28, 2001 Order related to a different set of documents than those sought by the present Motion, and, therefore, this Court is entitled to a fresh look at the matter. Nonetheless, this Court is fully aware of the guidelines Judge Kocoras has set forth in his previous opinions, and finds that the present Opinion is consistent with those principles.

### A. Second Set of Interrogatories, No. 1

On January 11, 2000, the Liquidator served his Second Set of Interrogatories to Certain Defendants. Interrogatory No. 1 asked for the factual and legal bases for each of the Affirmative Defenses asserted in this case by Defendants. In particular, Sunstates Realty Group, Inc. ("Sunstates Realty"), Sunstates Corporation ("Acton/Sunstates"), and Indiana Financial Investors, Inc., ("IFII") alleged more than $18 million in set-offs, and the Liquidator sought the factual and legal bases for these set-offs. Although Defendants technically responded to this interrogatory,

their answer is wholly inadequate, as it does not provide the Liquidator with the factual bases for these set-offs, such as the dates, nature, and structures of the transactions that gave rise to the alleged set-offs. Importantly, Defendants' deficient answer does not enable the Liquidator to defend the counterclaims.

Defendants counter in their Opposition Motion that the information regarding the set-offs has already been furnished to the Liquidator, and that documents relevant to the claims will be produced. They then cite Defendants' counsel's April 11, 2001 letter as satisfying their obligation to answer this interrogatory. However, as the Liquidator points out in his Reply, that letter is insufficient, as it is not in the form on an interrogatory answer, and, in any event, fails to specify the specific dates, nature, and structures of the transactions that gave rise to the alleged set-offs, the circumstances under which the transactions occurred, or why a particular transaction should be regarded as a set-off. Furthermore, the Liquidator states in his Reply that he has not agreed to await production of the Parent Company documents with respect to this interrogatory, as those documents will not identify the transactions which Defendants claim support the set-offs. Defendants must provide complete answers – including the relevant documents.

## B. Third Set of Interrogatories, No. 2[6]

Interrogatory No. 2 seeks information relating to the "chairman's Confidential matters" billed by the law firm of Althemier & Gray to Coronet. Mr. Engle was the Chairman of the Coronet Board of Directors, and the Liquidator contends that Mr. Engle caused Coronet to be billed for a legal matter involving his own personal residence. Defendants assert that discovery in response to this interrogatory has either already been provided, or that the Liquidator has agreed to await further production. (They also claim that they are continuing their investigation.) However, the Liquidator explains in his Reply that the information relevant to this interrogatory has not, in fact, been provided, and that he has not agreed to await production at a later date. Because this interrogatory seeks relevant and non-privileged[7] information,

---

[6] In the Liquidator's Motion to Compel, he also requested that Interrogatory No. 1 of this Third Set be answered and that the documents be produced. (This interrogatory requested that Defendants identify all money and other assets received by individual Defendants from the Parent Companies and the Downstream Affiliates.) However, in his Reply, the Liquidator withdrew, without prejudice to reinstate at a later date, this particular request, noting that Defendants had represented (again) that production of documents relevant to this request are forthcoming. As such, the Court will not rule on this particular request.

[7] In the Liquidator's Motion to Compel, the Liquidator states
(continued...)

Defendants are ordered to comply with this request.

**C.    Fourth Set of Interrogatories, Nos. 3 & 4.**

On April 21, 2000, the Liquidator served his Fourth Set of Interrogatories to Defendants. Interrogatories Nos. 3 and 4 seek information concerning the disposition of Defendant Sunstates Equities' ("SSE") assets[8], namely proceeds from the sale of Lerner

---

[7](...continued)
that Defendants, in their initial discovery responses, had claimed that this interrogatory improperly sought attorney-client privileged communications. However, in Defendants' Opposition Motion, they do not assert privilege, but, rather, that they have already responded, or that documents are forthcoming. The Court has serious doubts as to whether the attorney-client privilege would apply to this request, as Coronet was billed for the transaction, and, therefore, arguably owns the privilege. Furthermore, Defendants never provided a privilege log nor identified which particular documents are privileged. In any event, based on their Opposition Motion, it does not appear that Defendants are arguing privilege anymore. As such, they must comply with this request.

[8] The actual interrogatories request that Defendants identify all monies received by "any Defendant" from the bankruptcy estate of Hickory White Company and the sale of Lerner Publications, and, therefore, do not specify Defendant SSE *per se*. While SSE is one of the Downstream Affiliates, and the Liquidator focuses on SSE in his Motion to Compel and Reply (because, apparently, the Liquidator knows for certain that proceeds from the bankruptcy and sale of Lerner Publications are among the assets of SSE since the alleged fraudulent conveyance), the interrogatory is broader, and goes beyond Defendant SSE. Count XII of the Liquidator's Complaint alleges that the transfers of the Insurance Companies' controlling interests in Downstream Affiliates Sunstates Financial, RMHC, Wellco Holdings, and Alba Holdings were fraudulent conveyances for the same reason as SSE.
(continued...)

Publications, and proceeds from a settlement with the Bankruptcy Estate of Hickory White Company (another company allegedly owned and controlled by Defendants). The Liquidator's theory for requesting this information is straightforward, although Defendants have characterized it as "convoluted." (*See* Opposition Motion at 4.)

According to the Liquidator, SSE was a wholly-owned subsidiary of the Insurance Companies until approximately one month before those Companies were placed in liquidation. In the weeks before conservation, Defendants allegedly caused SSE to issue stock to affiliated companies outside the Insurance Companies' control. According to the Liquidator, the effect of the stock issuance was to dilute the Insurance Companies' ownership of SSE, as after the stock issuance, the Insurance Companies no longer held SSE's controlling interest. As such, Count XII in the Liquidator's Complaint states a claim for fraudulent conveyance, based on the

---

[8](...continued)
Therefore, Defendants' argument that these interrogatories are overbroad because they seek information from Defendants other than SSE is unavailing. If another Defendant (besides SSE) received these assets, then the Liquidator is entitled to this information for the same reasons that SSE is compelled to produce it. If no other Defendants, besides SSE, received these assets, then Defendants simply need to inform the Liquidator of this fact.

transfer of the Insurance Companies' controlling interest in SSE to affiliated companies. The Liquidator's theory is that, but for the alleged fraudulent conveyance transactions, the Insurance Companies would be the controlling shareholders with the right to control the assets of SSE. The Liquidator contends that the proceeds from the Lerner sale and the Hickory White Bankruptcy are among the assets that SSE has received since the Insurance Companies' controlling interest was fraudulently conveyed by Defendants. Therefore, according to the Liquidator, SSE's asset holdings are relevant in order to value the Liquidator's damages due to the Insurance Companies' loss of control of the company.

Defendants refuse to comply with these discovery requests, arguing erroneously that Judge Kocoras has rejected discovery of Defendants' post-1996 financial records. However, as discussed *supra*, Judge Kocoras placed no such temporal limit on discovery, and certainly never addressed whether the Liquidator could obtain post-1996 financial records dealing with potential damages due to the Insurance Companies' loss of control of SSE (and possibly other companies). Defendants further argue that assets received after December 1996 or January 1997 could not have originated from the Insurance Companies, as the Insurance Companies were liquidated in 1996. Even if this were true (the Liquidator in his Reply contends

-14-

that it is not, because the assets might have been received in conjunction with pre-existing obligations funded by the Insurance Companies) it is irrelevant, as the Liquidator's need for this information is not tied to the tracing analysis, but relates to his ability to quantify the loss sustained when control over SSE was allegedly fraudulently conveyed away from the Insurance Companies. In other words, the Liquidator's need for this information relates to his calculation of damages – not to the tracing analysis *per se*. Because this information is relevant and non-privileged, Defendants are ordered to comply with Interrogatories Nos. 3 and 4 of this Fourth Set of Interrogatories.[9]

---

[9] At the May 11, 2001 hearing, Counsel for Defendants argued that the Uniform Fraudulent Conveyances Act is very specific on how damages are measured, and that, because damages are measured at the time of conveyance, there is no need for the Liquidator to obtain financial documents after the conveyance in 1996. Therefore, according to Defendants, post-1996 financial documents are not relevant for the calculation of damages. (*See* Tr. of May 11, 2001 hearing at 17.)  However, Counsel for the Liquidator responded that post-1996 financial documents are, indeed, relevant for the damage assessment, because but for the alleged fraudulent conveyances, the Insurance Companies would own certain assets, such as the proceeds from the sale of Lerner Publications and the proceeds from the Hickory White bankruptcy. (*Id.* at 18-19.)  Therefore, according to Counsel for the Liquidator, he is entitled to know how much the assets were worth when they were finally sold.  Furthermore, Counsel for the Liquidator argued at the hearing that, if Defendants took the money from Lerner Publications, for instance, and moved it to another company, then such an act constitutes a subsequent fraudulent conveyance. (*Id.*
(continued...)

### D.    Fifth Set of Interrogatories, Nos. 1-7

The Fifth Set of Interrogatories, served on Defendants on September 19, 2000, seeks documents relating to three categories of loans: (1) five loans from third-party banks to Parent Companies; (2) a loan from a Parent Company to Mr. Engle; and (3) a loan from a third-bank to Mr. Engle.  According to the Liquidator, discovery has revealed that Defendants used Insurance Company money to repay obligations to several banks that had issued loans to Parent Companies.    As   such,   the   Liquidator   requested   in   the Interrogatories the loan numbers, the amount of the loans, the terms of repayment, the date and amount of all payments of interest and principal pursuant to the loans, any refinancing of the loans, including terms and dates and amounts of payments, and the purpose of the loans.    In addition, Interrogatory No. 7 seeks similar information with respect to an indenture agreement between Telco and Chicago Title and Trust Co.

---

[9](...continued)
at 19.) While conceding that money could not have been taken from the Insurance Companies once they were liquidated in 1996, Counsel for the Liquidator maintains that the ripple effects of the transactions continue.  (*Id.* at 20.)   At the discovery stage, this Court will not prescribe which damages theory will ultimately prevail at trial.   Discovery is broad, and the Liquidator is entitled to information that even arguably supports his theory of damages.

With respect to the loans to the Parent Companies (Interrogatories Nos. 3-7), Defendants assert in their Opposition Motion that the Liquidator has agreed to await production of Parent Company documents related to the five loans to Parent Companies. The Liquidator counters, however, that any agreement to await production was conditioned on promises not kept by Defendants. Moreover, according to the Liquidator, the Parent Company documents are likely to include only the payment histories of the loans, and not the specific information sought by the Interrogatories. Because these Interrogatories seek relevant, non-privileged information - information that as of May 4, 2001 (date of the Liquidator's's Reply) has not been provided to the Liquidator - Defendants are ordered to respond to the specific information requested in Interrogatories Nos. 3-7 with respect to the loans to the Parent Companies.

Similarly, Interrogatories Nos. 1 and 2 seek information related to personal loans to Mr. Engle, and Defendants are ordered to comply with these requests. Defendants argue that Judge Kocoras' February 28, 2001 Order precludes responding to these requests concerning personal loans to Mr. Engle, as Judge Kocoras' Order directed Mr. Engle to produce only documents related to transactions among the Parent Companies and himself. However, as

a preliminary matter – even if Judge Kocoras' February 28th Order were relevant to the issues *sub judice* – Interrogatory No. 2 seeks information concerning a loan from Parent Company Libco to Mr. Engle, and, therefore, clearly falls under Judge Kocoras' previous Order. But, the more critical point, is that Judge Kocoras' Order resulted from a motion concerning different discovery requests than those at issue in the present Motion to Compel.[10] The loans to Mr. Engle are relevant to this case, because Mr. Engle, similar to the Parent Companies, may have used Insurance Company money to satisfy his indebtedness. As such, Defendants are ordered to comply with

---

[10] In Judge Kocoras' February 28, 2001 Order, he states: "The Plaintiff, in his Reply brief, requests clarification about Defendant Clyde Engle's role in this discovery process. In the Plaintiff's May 2000 motion to compel, Engle was requested to turn over documents reflecting transfers between Parent Companies and Engle. Pl.'s Motion to Compel at 8. The Court granted that request, and now reiterates its order for Engle to produce the relevant documents." (Feb. 28, 2001 Order at 6.) Clearly, Judge Kocoras' Order is responding to a specific request by the Liquidator – namely, that Mr. Engle produce documents reflecting transfers between Parent Companies and Mr. Engle – and does not speak to Interrogatory No. 1 (from the Fifth Set of Interrogatories) concerning a loan from a third-party bank to Mr. Engle. Furthermore, at the May 11, 2001 hearing, Counsel for the Liquidator emphasized that Interrogatory No. 1 targets a specific loan from the Bank of Lincolnwood to Mr. Engle (and does not delve into all the personal finances of Mr. Engle), and that Judge Kocoras never addressed this particular discovery request. (Tr. of May 11, 2001 hearing at 9, 11-12.) This Court agrees with the Liquidator's counsel and finds that Defendants must respond.

-18-

Interrogatories Nos. 1 & 2 dealing with personal loans to Mr. Engle.

### E. Second Request for Production of Documents and Things, Nos. 10 and 11(c).

On February 24, 2000, the Liquidator served his Second Request for Production of Documents. Request No. 10 seeks current financial information about some Downstream Affiliates, the control of which was allegedly fraudulently conveyed away from the Insurance Companies prior to liquidation (in the same manner and for the same reasons as discussed *supra* with respect to SSE). According to the Liquidator, he must know the present value of the Downstream Affiliates in order to assess damages arising from the conveyances. The Liquidator also contends that, before they failed, the Insurance Companies were caused to purchase stock in the Downstream Affiliates, and that one measure of damages caused by these transactions is the difference between the Insurance Company cash paid for the stock and its value today. The Liquidator also has claims seeking, *inter alia*, recission of those transactions and restoration of the Insurance Companies' ownership of the Downstream Affiliates, or damages based on the loss of those assets.

Defendants incorrectly argue that Judge Kocoras' previous

-19-

dismissal of an accounting claim in the Complaint means that Defendants do not have to comply with this document request. However, Judge Kocoras' dismissal of the accounting claim was because the Liquidator had not alleged an "absence of remedy at law" or any breach of fiduciary duty by any of the Downstream Affiliates - necessary pleading requirements in an action for accounting. Significantly, Judge Kocoras' dismissal of the accounting claim has absolutely no relevance to the Liquidator's subsequent request for information relating to damages on the fraudulent conveyance claims that were not dismissed.[11] Accordingly, Defendants must comply with this document request.

Request 11(c) seeks documents related to the Hickory White Bankruptcy settlement, the proceeds of which were allegedly transferred to SSE and perhaps other Defendants. These documents relate to the alleged fraudulent conveyance claims, and as discussed *supra* with respect to the Fourth Set of Interrogatories, must be produced.

---

[11] Defendants also reiterate their previously rejected argument that information for the time period subsequent to the Insurance Companies' liquidation (after December 1996 and January 1997) is irrelevant, and not calculated to lead to the discovery of admissible evidence. However, as discussed *supra*, such information is relevant to damages.

**F.    Third Request for Production of Documents and Things, No. 2.[12]**

Requests 2(a),(b), and (c) seek documents related to particular assets held by SSE.  Request 2(a) concerns proceeds received from the sale of Lerner Publications, and 2(b) relates to proceeds of the settlement with the Bankruptcy Estate of Hickory White Company.    Request 2(c) seeks documents related to collectibles – such as art, jewelry, and books – allegedly purchased by SSE with Insurance Company money prior to liquidation and kept at Mr. Engle's residence.[13]   As discussed *supra* with respect to the Fourth Set of Interrogatories, Nos. 3 & 4, these documents are relevant to assessing the damages incurred by the Insurance Companies due to Defendants' alleged fraudulent conveyance of control of SSE.  As such, they must be produced.

---

[12] In the Liquidator's Motion to Compel, he also requested that Defendants be compelled to respond to Document Request No. 1, concerning the transfers from Hickory White (or on its behalf) to Citibank.  However, in his Reply, the Liquidator withdrew, without prejudice, the portion of this Motion seeking to compel production of these documents pending their production by the Parent Companies.  Apparently, Defendants conceded that they must produce such information pursuant to Judge Kocoras' February 28, 2001 Order.  As such, this Court will not rule on this request at this time.

[13] Apparently, in the deposition of Colleen Lange, Mr. Engle's sister-in-law, who was hired by Coronet to be a "curator" of the collectibles, she testified that these collectibles were being liquidated.

G.    **Fourth Request for Production of Documents and Things, Nos. 1-7.**

Finally, the Fourth Request for Documents and Things, served on September 19, 2000, seeks documents related to the loans that were the subject of the Fifth Set of Interrogatories, discussed *supra*. Because these document requests, regarding the loans, seek relevant, non-privileged information, Defendants are ordered to produce responsive documents.

## CONCLUSION

For the reasons set forth above, this Court orders complete responses to the following interrogatories:  Second Set, No. 1; Third Set, No. 2; Fourth Set, Nos. 3 & 4; and Fifth Set, Nos. 1-7. Additionally, this Court orders Defendants to produce all documents responsive to the following document requests: Second Request, Nos. 10 and 11(c); Third Request No. 2; and Fourth Request, Nos. 1-7. All responses and documents shall be provided within twenty-one (21) days of the issuance of this Court's Order.  Finally, because the Court finds that Defendants have not been cooperative with responding to the Liquidator's discovery requests, and because Defendants clearly misrepresented the import of Judge Kocoras' February 28, 2001 Order, the Court orders Defendants to pay the Liquidator his attorneys' fees and costs of bringing this Motion to

Compel.

IT IS THEREFORE ORDERED that the Liquidator's (Plaintiff's) Motion to Compel be, and the same hereby is, GRANTED.


DATED: May 24, 2001                    ENTER:

                                       ARLANDER KEYS
                                       United States Magistrate Judge