IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATHANIEL S. SHAPO, etc.,  )
                           )   No. 98 C 7909
    Plaintiff,              )
                           )   Judge Amy J. St. Eve
vs.                        )
                           )   Magistrate Judge
CLYDE WM. ENGLE, et al.,   )   Arlander Keys
                           )
    Defendants.            )

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Foley & Lardner LLP's ("Foley") Motion Requesting Magistrate Judge Keys to Appoint An Expert for Sale of Bank Stock or For a Determination that No Expert Should Be Appointed. Foley represented Mr. Engle in the underlying litigation, wherein Mr. Engle was sued by Mr. Nathaniel Shapo, the former Illinois Director of Insurance, in his capacity as the Liquidator ("Liquidator") of several insurance companies to which Mr. Engle had close ties[1].

On February 18, 2003, the district court referred the matter to this Court for a settlement conference. The parties agreed to a settlement in principle on March 7, 2003, but requested additional time to finalize the agreement. After protracted negotiations, including additional court-supervised settlement conferences, the parties finally executed a Settlement Agreement

---

[1] Mr. Shapo brought this suit pursuant to the Illinois Insurance Code and the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, et seq., alleging that Mr. Engle was the mastermind of a civil conspiracy to siphon off funds from the insurance companies.

on February 5, 2004 (the "Settlement Agreement"). The district court then dismissed the case without prejudice, retaining jurisdiction to enforce the terms of the Settlement Agreement between the Mr. Engle and the Liquidator.

Not surprisingly, Mr. Engle incurred substantial attorneys fees during this period. In January of 2005, Foley and Mr. Engle entered into a separate settlement agreement regarding the payment of those fees. Two notable documents forming that agreement include: 1) the Master Payment Agreement ("MPA"); and 2) the Foley Stock Pledge Agreement ("SPA"). The MPA required Mr. Engle to make several installment payments to Foley. The SPA provided a procedure for the sale of certain stock in Lincolnwood Bancorp. Inc, which Mr. Engle had pledged to secure the owed fees, in the event that Mr. Engle defaulted on the installment payments described in the MPA. Under the SPA, the parties agreed that, in the event of default, each of the parties could select an Expert, who would be hired to sell the stock secured by the MPA. If the parties could not agree on such an expert, the SPA provided as follows:

> If Foley disapproves [of Engle's] Expert, the parties agree
> that Magistrate Arlander Keys of the United States District
> Court, Northern District of Illinois, or his successor in
> office, shall have the final decision as to who shall be the
> Expert (for this purpose Magistrate Keys or his successor in
> office is not limited to choosing either of the Experts
> proposed by Foley or [Engle] . . .If Magistrate Keys or his
> successor concludes that no Expert can or should be hired,
> the provisions of the Code then in effect in Illinois shall
> apply to the sale.

See SPA, EX. B to Foley's Motion.

Shortly after executing these documents, Mr. Engle failed to make the timely installment payments under the terms outlined by the MPA. On July 25, 2005, Foley filed a motion for Confession of Judgment before the district court, asking the court to order Mr. Engle to pay the outstanding fees. The court issued an Order on August 18, 2005, granting Foley's Motion and ordering Mr. Engle to pay the fees, pursuant to the district court's retention of jurisdiction to enforce the terms of the Settlement Agreement[2].

The district court issued another order on December 20, 2005, again directing Mr. Engle to pay the disputed fees. Mr. Engle appealed both orders, challenging the district court's assertion of ancillary jurisdiction over the fee dispute between Foley and Mr. Engle.

On appeal, the Seventh Circuit noted the potential confusion that arises when courts dismiss cases before "they're really over," suggesting that the district court should have "waited before entering any order of dismissal until the various undertaking constituting the settlement were completed." *Shapo v. Engle,* 463 F.3d 641, 643 (7th Cir. 2006.) The court noted that the present dispute did not concern the parties to the

---

[2] Notably, Mr. Engle did not bother to respond to Foley's Motion.

original Settlement Agreement, but instead involved one of the parties and his attorney, and questioned whether the district court could have retained jurisdiction over documents executed after the entry of the Settlement Agreement. The Seventh Circuit acknowledged that disputes over provisions within a settlement agreement relating to legal fees may be within the district court's ancillary jurisdiction. *Id.* at 644. The Seventh Circuit explained the limits of ancillary jurisdiction, stating that such jurisdiction:

> is not to enable a federal court to encroach on the jurisdiction reserved to the states merely because the parties would prefer to have a federal court resolve their future disputes (not necessarily future disputes between them, moreover- Foley & Lardner was not a party to Shapo's suit.) The settlement agreement could not require that if one of the parties and his lawyer had a falling out, and the party sued the lawyer for malpractice in the litigation that was settled, the suit could be brought in the federal court even if the malpractice was not based on federal law and there was no diversity of citizenship. Parties cannot confer federal jurisdiction by agreement. There would have to be special circumstances to allow a federal court to enforce such a requirement, such as an existing dispute between lawyer and client that if unresolved would preclude a settlement.
> But the prior question is whether the Master Payment Agreement *was* a part of the settlement agreement. If it was not, there could be no argument that the suit by a lawyer for one of the parties against the party to collect his fee was ancillary to the original suit.

*Id.* at 645.

Upon remand, the district court analyzed the Settlement Agreement between Plaintiff and Defendant, and determined that the MPA between Foley and Mr. Engle was not a part of that

4

Settlement Agreement. *Shapo v. Engle,* No. 98 CV 7909 (N.D. Ill. April 12, 2007). As such, the district court concluded that it did not have ancillary jurisdiction over the fee dispute between Foley and Mr. Engle. *Id.* at *5 (granting Engle's Motion to Dismiss the Motions of Foley & Lardner LLP for Confession of Judgment and denying Foley & Lardner's Motion for Re-entry of Judgments Against Clyde Engle). The court also rejected as meritless Foley's attempt to argue that the court had supplemental jurisdiction over the matter. *Id.*

On December 10, 2007, Foley sent a letter to this Court, requesting the appointment of an Expert or to determine that no Expert can or should be appointed, pursuant to the terms of the SPA. When no response to the letter was forthcoming, Foley was directed to notice up a motion before the Court. In compliance with the request, Foley filed the present Motion.

Mr. Engle objects to Foley's Motion asking this Court to appoint an Expert, arguing that: 1) pursuant to the district court's determination, this Court is without jurisdiction to enforce the terms of the MPA or the SPA; and 2) this Court cannot act in a private capacity as a neutral in the dispute between Foley and Mr. Engle. Foley readily concedes the jurisdictional point, but asserts that the Court is not prohibited from either appointing an Expert in a private capacity as a neutral or from determining that no Expert can or should be appointed, under the

terms of the SPA.

The terms of the SPA explicitly designates this Court, or its successor, to appoint an Expert. Of course, the parties cannot create federal jurisdiction by consent. *Insurance Corp of Ireland, Ltd. V. Compaignie des Bauxites e Guinee,* 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant.") Undeterred by this obvious impediment, Foley asserts that the SPA seeks to have this Court act in a purely private capacity.

Mr. Engle counters that the SPA does not support this proposition. Mr. Engle notes that the language of the SPA clearly calls for the selection of an Expert to be made, not by a private party, but by "Magistrate Arlander Keys of the United States District Court, Northern District of Illinois, *or his successor in office.*" This language denotes not a private individual, but a Magistrate Judge- either Judge Keys or his successor.

Even if this Court were to overlook the clear import of the SPA's language, Mr. Engle argues, Foley's Motion must be rejected because this Court is not permitted to act in the private capacity suggested by Foley. The statute defining the powers and duties of magistrate judges provides that: "Full-time United States magistrate judges may not engage in the practice of law,

and may not engage in any other business, occupation, or employment inconsistent with the expeditious, proper, and impartial performance of their duties as judicial officers." 28 U.S.C. § 632(a).

Foley disagrees that the statute imposes an absolute bar to this Court acting as a neutral in a dispute between two private parties, arguing that the Court has the discretion to engage in such conduct, so long as it is not inconsistent with the expeditious, proper, and impartial performance of its duties as a magistrate judge. Foley concedes, however, that this Court could become involved in a dispute in the underlying action between Mr. Shapo and Mr. Engle. Notably, the Settlement Agreement between Mr. Shapo and Mr. Engle also provides for this Court to appoint an Expert for the sale of bank stock in the event that Mr. Engle defaults on the terms of the Settlement Agreement, and Mr. Shapo and Mr. Engle cannot agree on the appointment of an Expert. Foley concedes that, if this Court were to appoint an Expert at Foley's request, such conduct could be construed as being inconsistent with the impartial performance of duties as a judicial officer in the event any dispute between Mr. Engle and Mr. Shapo comes before this Court.

It is clear that this Court, in its official capacity, does not have the jurisdiction to resolve the dispute between Foley and Mr. Engle. *Shapo v. Engle*, 98 C 7909 (April 12, 2007). And

while 28 U.S.C. § 632(a) may not expressly prohibit a Magistrate Judge from assisting private litigants in certain matters, doing so in the instant case runs the risk of engaging in conduct "inconsistent with the expeditious, proper, and impartial performance of [this Court's] duties as judicial officers." 28 U.S.C. § 632(a). As Foley concedes, the extent of this Court's required involvement in future matters concerning Mr. Shapo and Mr. Engle remain unknown, rendering any private entanglement by this Court with Mr. Engle's legal affairs injudicious.

The Court can envision little benefit in unnecesarily involving itself in what is essentially a breach of contract case, which falls squarely within the state courts' jurisdiction. *Engle v. Foley*, 463 F.3d 641, 644-45 (7th Cir. 2006) (noting that Mr. Engle's compliance with the MPA has no federal significance, and that permitting a federal court to resolve this dispute would encroach on the jurisdiction reserved to the states.) Notably, Foley and Mr. Engle are presently litigating overlapping issues in the Chancery Division of the Circuit Court of Cook County, where Mr. Engle filed suit seeking: 1) declaratory judgment that the MPA is void; 2) a judgment of recision; 3) an accounting; and 4) an adjudication of the Foley attorney fees. *Engle v. Foley*, No. 07 CH 17266. Clearly, Chancery Court is the appropriate forum for Foley to pursue its remedies. Therefore, the Court denies Foley's Motion, and declines to act as a private entity

for the purpose of either appointing an Expert or deciding that no Expert should be appointed under the terms of the MPA.

## CONCLUSION

For the reasons set forth above, Foley's Motion Requesting Magistrate Judge Keys to Appoint An Expert for Sale of Bank Stock or For a Determination that No Expert Should Be Appointed is Denied.

Dated: March 14, 2008          E N T E R:


                               _____
                               ARLANDER KEYS
                               United States Magistrate Judge